UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL P. WINCAPAW,

    Plaintiff,

v.                                 Case No. 09-CV-904

COUNTY OF WAUKESHA,
MICHAEL GIESE, BRIAN HEALY, and
JOHN P. HIVELY,

    Defendants.

**DECISION AND ORDER**

**I. PROCEDURAL BACKGROUND**

On September 18, 2009, plaintiff Daniel P. Wincapaw commenced this suit pursuant to 42 U.S.C. § 1983 and Wisconsin tort law, complaining that he received constitutionally inadequate medical attention for an injury he sustained while imprisoned at Waukesha County Jail. Upon the parties' consent to the exercise of jurisdiction by a magistrate judge, the case was transferred to this court for all further proceedings, including entry of final judgment, on December 31, 2009. On September 15, 2010, this court granted defendant County of Waukesha's ("County") motion requesting leave to file a counterclaim seeking reimbursement of Wincapaw's medical costs under Wis. Stat. § 302.38.[1] This court has federal question jurisdiction over Wincapaw's § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1334(a)(3)–(4) and supplemental jurisdiction over Wincapaw's

---

[1] All references to the Wisconsin statutes are to the 2007–2008 version.

1

state law claims and the County's state law counterclaim pursuant to 28 U.S.C. § 1367.

Wincapaw's complaint asserts five counts and names nine defendants, five of whom have been dismissed upon the merits and with prejudice.[2] Counts III and V were dismissed along with the five former defendants. Accordingly, at the time this motion was filed, only three counts remained–Counts I, II and IV. Counts I and II are brought under 42 U.S.C. § 1983 and Count IV is brought under Wisconsin tort law. Count I asserts that defendant Brian Healy failed to provide appropriate medical care after defendant John P. Hively slammed a jail cell door upon Wincapaw's hand. Count II asserts that in accordance with jail policy, practice, or procedure, the County, through its Jail Administrator, defendant Michael Geise, failed to provide Wincapaw appropriate medical care by denying him prescribed medications. Finally, Count IV asserts that defendant Hively negligently, carelessly, and recklessly slammed a jail cell door on Wincapaw's hand causing him great pain and suffering. Wincapaw seeks damages on all claims.

On March 21, 2011, the remaining defendants, Michael Giese, Brian Healy, John Hively, and the County (collectively "defendants") filed a motion for summary judgment seeking dismissal of the three remaining claims on numerous grounds, as well as entry of judgment in favor of the County on its counterclaim.

The defendants' motion is now fully briefed and is ready for resolution. For the reasons set forth below, the defendants' motion for summary judgment seeking dismissal of Counts I and II will be granted. With these federal claims dismissed, the court declines to exercise supplemental jurisdiction over Count IV, Wincapaw's state law claim, as well as the County's counterclaim.

---

[2] The following defendants were dismissed from this action: Stephanie Rios, Correct Care Solutions, and Punno Ose Mackiel on September 1, 2010; and Andrew Nunnally and Tracy Lewandowski on September 14, 2010. As a result of their dismissal, only three claims remain, two federal and one state.

2

## II. FACTUAL BACKGROUND

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendants' motion for summary judgment was accompanied by a set of proposed findings of fact. Wincapaw filed a response to the defendants' proposed findings along with a set of supplemental proposed findings of fact, to which the defendants later filed a response. A review of the parties' proposed findings of fact and objections thereto reveals that the parties agree on little. However, it does not appear that the parties' disagreements will prevent this court from deciding the defendants' motion. To that end, the court finds that the following facts, except as otherwise noted, are undisputed.

The plaintiff, Daniel Wincapaw, is a former inmate of Waukesha County Jail, where he was jailed from September 22, 2007 to October 25, 2007. (DPFOP ¶ 1.) The individual defendants, Michael Giese, Waukesha County Jail Administrator, Brian Healy, Shift Captain, and John Hively, Correctional Officer each worked at the jail during Wincapaw's imprisonment. (DPFOP ¶¶ 2–4.)

The events leading to Wincapaw's lawsuit began on September 27, 2007. (DPFOP ¶ 5.) That evening, Wincapaw engaged in disruptive and disrespectful behavior resulting in Officer Hively issuing Wincapaw a verbal reprimand for violating jail rules. (SPFOF ¶ 18; DPFOP ¶¶ 9–10.) To better control his behavior, officers decided to move Wincapaw from his cell in Near Term A, a short-term housing unit, to a holding cell in better view of correctional staff. (DPFOF ¶ 13.)

At his deposition, Wincapaw testified that during his transfer, Officer Hively struck his hand

with the holding cell's door as he pushed it closed.[3] (DPFOF ¶¶ 14–15.) Defendants deny Wincapaw's accusations, asserting instead that Wincapaw was seated on a bench within his cell, away from the door, and that the was door closed without incident. (DPFOF ¶ 34; SPFOF ¶ 19.) Either way, the parties agree that on the night of the alleged incident, Officer Hively did not observe any bruising, bleeding, cuts, or swelling to Wincapaw's hand. (DPFOF ¶ 40.)

Waukesha County Jail provides inmates on-site and, when necessary, off-site medical care. (DPFOF ¶¶ 45–46.) To access medical care, a prisoner must complete a form titled "Request for Medical/Mental Health Attention Form" ("Request Form") and submit it directly to medical staff. (DPFOF ¶¶ 55–56.) This process is set forth in the Waukesha County Sheriff's Department County Jail Facility Inmate Rules, Regulations and Information Packet, which Wincapaw received and acknowledged at his September 22, 2007 booking. (DPFOF ¶¶ 52, 59.) If a prisoner needs urgent medical care, he may verbally communicate any such need to passing medical or correctional staff. (DPFOF ¶ 66.) Passing medical and correctional staff would also have the opportunity to independently observe any need for urgent medical care. (DPFOF ¶ 67.)

Wincapaw did not submit a Request Form on September 27, the date of the alleged injury. Instead, he submitted a Request Form on September 29, complaining "Right hand middle finger closed in cell door. CO intake. Infection in hand. Loss of mobility. Terrible pain in joints." (DPFOF ¶¶ 72–73.) He claims that he did not have an opportunity to submit the requisite Request Form until the 29th because he had no pen or pencil in his jail cell and because he was not being heard by the correctional officers. (SPFOF ¶ 2.) The defendants deny that Wincapaw was without opportunity

---

[3] Although the parties dispute whether the holding cell door actually struck Wincapaw's hand, for purposes of addressing Wincapaw's Eighth Amendment claims, the cause of his injury is immaterial. What is relevant, is the date of the alleged injury, September 27, 2007.

4

to make a request. (SPFOF Response ¶ 2.)

Wincapaw did, however, request and receive ice to treat his swollen hand. (SPFOF ¶4.) Wincapaw claims that along with the ice, he received instructions to plug his sink drain with toilet paper, fill the sink half-full with water, remove the ice from its bag, dump the ice into the water, and then submerge his hand for increments of 15–20 seconds or as long as he could.[4] (SPFOF ¶ 4.) Wincapaw goes on to claim that soaking his hand in this manner made him more susceptible to infection, caused his hand to burn really badly, and caused skin to peel off.[5] (SPFOF ¶¶ 5, 17.) Wincapaw later learned that the ice he received may have been contaminated with salt or pepper. Although the defendants have no knowledge of whether the ice Wincapaw received was in fact contaminated, each admits that it had become a common practice among correctional officers to put some type of contaminant, such as salt or pepper, into ice bags to deter inmates from using it to cool drinks or from strong-arming other prisoners for ice. (SPFOF ¶¶ 30, 49, 74.) The ice is provided to inmates in heat-sealed bags. (SPFOF ¶¶ 30, 49–51, 71). Generally, inmates are not told that there are contaminants in the ice, nor are they given instructions on how to use it. (SPFOF ¶¶ 71, 73.) And, while opening ice bags is frowned upon, prisoners are generally not told they cannot open them. (SPFOF ¶ 71.)

Shortly after submitting his Request Form on September 29, Wincapaw received a nursing response, (DPFOF ¶ 74) and the following day, September 30, nursing staff examined Wincapaw

---

[4] It is unclear from the parties' proposed findings of fact on what date(s) Wincapaw received ice and who gave him the instructions to empty the ice bag into his sink.

[5] Defendants object to this claim on evidentiary grounds. Specifically, they argue that because Wincapaw is a lay witness he is "not qualified to offer an opinion that soaking his hand in ice water with salt and other contaminants 'made some of the skin fall off' and offers no expert testimony in support of [his] assertions." (SPFOF Response ¶ 5.)

5

in sick call. (DPFOF ¶ 74.) There, the nurse "buddy taped" Wincapaw's fingers and provided him with Tylenol. (DPFOF ¶ 80.) The nurse observed discoloration and swelling at the joint, but no drainage. (DPFOF ¶ 79.) The nursing staff then discussed these observations with a doctor, who ordered the antibiotic Cleocin and an x-ray with emphasis on the third finger. (DPFOF ¶ 81.) The ordered x-ray was taken on October 3, 2007; it showed no fracture or other structural injury. (DPFOF ¶¶ 82, 89.)

The next day, October 4, 2007, Wincapaw was examined by Dr. Punnoose Mackiel. (DPFOF ¶ 84.) After observing that Wincapaw's finger was infected, inflamed, and swollen, Dr. Mackiel sent Wincapaw to Waukesha Memorial Hospital, where he underwent surgery on his middle finger. (DPFOF ¶¶ 84–85, 88.) Wincapaw returned to Waukesha County Jail on October 5, 2007, with prescriptions for two medications–Keflex to treat the infection and Oxycodone to manage the pain– as prescribed by Dr. John Bolger, his surgeon. (DPFOF ¶ 90.) Results from cultures taken at the hospital revealed that Keflex would likely be ineffective in treating the infection, so Dr. Mackiel prescribed Wincapaw the antibiotic Cleocin instead. (DPFOF ¶¶ 92–93.) That prescription was later changed to a different antibiotic, Bactrim, on October 10, 2007. (DPFOF ¶ 95.) Wincapaw was also not provided Oxycodone as prescribed; instead, he received Tylenol 3, an alternative pain management medication. This substitution was made because Tylenol 3 was on-hand at the jail and because Tylenol 3 is a more appropriate drug for patients, such as Wincapaw, with a history of prescription painkiller abuse. (DPFOF ¶ 97–98.)

From the time of his discharge from the hospital on October 5, 2007, to his release from jail on October 25, 2007, Wincapaw received routine care for his injury and other ailments as they arose. (DPFOF ¶¶ 102–110.) Following his release, Wincapaw continued to see Dr. Bolger as well as his

6

primary care physician for treatment of his hand. (DPFOF ¶ 110–113.)

### III. STANDARD OF REVIEW

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

7

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). "A mere scintilla of evidence in support of the nonmovant's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

In their brief, the defendants argue they are entitled to summary judgment on Wincapaw's remaining federal and state law claims on several grounds rendered irrelevant to the disposition of this motion by Wincapaw's opposition brief. More particularly, in his opposition brief, Wincapaw does not oppose the defendants' motion as to the federal claims. He concedes that "[t]here is no indication of any personal involvement of the remaining three [individual] defendants with respect to the provision of medical care . . . ." In effect, this eliminates both remaining § 1983 claims. Therefore, the defendants' motion for summary judgment as to Counts I and II is granted.

8

Recognizing that this concession leaves him with no federal claims, Wincapaw's brief sets forth a new ground for § 1983 relief–that by contaminating ice bags the County "engaged in a practice or procedure which violated the eight amendment (sic) right to appropriate medical care when as a matter of course it routinely contaminated ice bags provided to inmates who claimed injury," and that prison personnel provided the contaminated ice "in total disregard of any effect the contaminant may have upon [a prisoner's] injury." (Pl's Br. 11–12.)

The defendants also seek dismissal of Wincapaw's state law negligence claim on statutory immunity grounds as well as entry of judgment on the County's state law counterclaim. The court will begin by addressing Wincapaw's newly asserted § 1983 claim, then finish by addressing the parties' state law claims.

*a. Federal Claims*

The defendants seek dismissal of Wincapaw's newly asserted § 1983 claim on two grounds. First, defendants ask the court not to consider the argument on its merits because Wincapaw did not raise it in his complaint; in the alternative, defendants ask the court to dismiss the claim for lack of merit.

It is correct that Wincapaw's complaint does not allege that providing contaminated ice to inmates was a practice or procedure by which the County violated his Eighth Amendment rights. Instead, Wincapaw alleges that Andrew Nunnally, who was dismissed from this action on September 14, 2010, provided Wincapaw with ice contaminated with "either salt or pepper or other substances all in violation of his Eighth Amendment right to receive appropriate medical care and treatment and in deliberate indifference to his Eighth Amendment constitutional rights." (Complaint ¶ 16.) It is well-established that a plaintiff may not amend his complaint through a summary judgment brief.

9

*Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir.1997) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). However, because Wincapaw cannot prove an Eighth Amendment violation by the County. I will address the claim and dismiss it on its merits.

To establish a claim under § 1983, a plaintiff must prove that: (1) a person acting under color of state law (2) deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du lac*, 384 F.3d 856, 861 (7th Cir. 2004)).

The first element requires that a defendant be "a person" within the meaning of the statute. In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the United States Supreme Court held that municipalities are persons capable of being sued under §1983, where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers" or where "the constitutional deprivation[ is] visited pursuant to governmental 'custom,'" even if such custom was not formally approved by the municipality's officers. *Id.* at 690–91. Municipalities may not, however, be sued under § 1983 solely on a *respondeat superior* theory. *Id.* at 691.

The Eighth Amendment prohibition against cruel and unusual punishment includes protection from "punishments which are incompatible with "'the evolving standards of decency' . . . or which involve 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal citations omitted). With these elementary principles in mind, the Supreme Court has interpreted the Eighth Amendment to place an obligation upon the government to provide medical care for those it punishes by incarceration, such that prisoners do not suffer pain that does not serve a penal purpose. *Id.* at 103; *see also Duckworth v. Ahmad*, 532 F.3d 675, 678 (7th Cir. 2008).

To rise to a level proscribed by the Eighth Amendment, a prison official's conduct with regard to a prisoner's medical care must be in "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104. When determining whether a prison guard's conduct is in "deliberate indifference to serious medical need," the court conducts a two-part analysis containing an objective and subjective element. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Duckworth*, 532 F.3d at 679 (citing *Sherrod v. Lengle*, 223 F.3d 605, 610 (7th Cir. 2000).

Although there is no precise test for assessing the seriousness of a medical condition, courts ask whether the medical condition would result in needless pain and suffering if medical care were denied. *Gutierrez*, 111 F.3d at 1371. This inquiry contemplates a medical condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez*, 111 F.3d at 1373 (quoting and embracing the standard set forth in *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). In other words, prisoners have a constitutional right to receive treatment for both fatal and nonfatal, but painful, medical conditions, *Walker v. Benhamin*, 293 F.3d 1030, 1040 (7th Cir. 2002), but not treatment for "the sorts of ailments for which many people who are not in prison do not seek medical attention." *Gutierrez*, 111 F.2d at 1372 (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

The subjective element requires that the prison official act with a "sufficiently culpable state of mind," that is, deliberate indifference to the prisoner's serious medical need. *Id.* at 1369 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This element has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard

11

that risk. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)). Prison guards may display deliberate indifference through acts or omissions, including inadequate responses to prisoner needs, delay or denial of medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104–05. On the other hand, certain acts or omissions resulting in added pain to prisoners, such as negligent provision of medical care, inadvertent failure to diagnose, election of one form of medical treatment over another, or the occurrence of unforeseeable accidents do not rise to the level of deliberate indifference. *Id.* at 105–07.

Turning to the present facts, which, for the purposes of summary judgment, I will consider in a light most favorable to the nonmovant, Wincapaw, it is clear that defendants are entitled to judgment as a matter of law. To establish a claim under *Monell,* Wincapaw must prove that his Eighth Amendment rights were violated pursuant to a County policy or custom. Although a review of the parties' proposed findings of fact indicate that it is customary for corrections officers to provide prisoners with contaminated ice, Wincapaw fails to show that this custom violates a prisoners' Eighth Amendment rights.

To establish an Eighth Amendment violation predicated on inadequate medical treatment, Wincapaw must show that he had (1) an objectively serious medical condition to which (2) the County was, pursuant to custom, deliberately indifferent.

Without deciding whether his injury was objectively serious enough to mandate medical treatment, the court finds that Wincapaw has failed to establish a constitutional violation because he has not shown that the custom was carried out in deliberate indifference to prisoners' medical needs. Wincapaw has provided no evidence that contaminating ice with salt and pepper poses a risk to the

health of prisoners, let alone has he provided evidence that the County disregarded such risk. Instead, Wincapaw depends solely on conclusory and unsupported statements that the contaminants made him more susceptible to infection, caused his wound to burn, and caused his skin to peel off.

A review of the facts shows that the practice of providing prisoners with ice, whether contaminated or not, poses no risk to prisoner health and is responsive, not indifferent, to prisoners' medical conditions. If a prisoner sustains an injury, he may request ice to treat inflammation. Once approved by nursing staff, a corrections officer places ice in a plastic bag. The officer may add salt or pepper to the ice to prevent prisoners from using it to chill beverages or strong-arm other prisoners. The officer then seals the bag using a heat-sealer and delivers it to the injured prisoner. The plastic bag prevents the ice and any contaminants from making contact with the prisoner's skin. Therefore, had Wincapaw left the ice in the sealed bag as provided, any pain, irritation, or peeling of the skin that may have been caused by contaminants would have been avoided. Even if someone, as Wincapaw claims, instructed him to take the ice out of the bag to create an ice bath, Wincapaw has failed to show that such instructions were anything more than an isolated incident, and one instance of such instructions cannot support a finding of custom. Moreover, Wincapaw again fails to provide any showing that such instructions were given with deliberate indifference to medical need as required to establish an Eighth Amendment violation.

Based on these facts, no reasonable juror could find that the County's custom of contaminating ice was done to cause pain or irritation to prisoners. Wincapaw has failed to present facts demonstrating that the County had a policy or custom of showing "deliberate indifference to serious medical needs," in violation of the Eighth Amendment. Accordingly, the defendants' motion for summary judgment seeking dismissal of Wincapaw's newly asserted § 1983 claim will be

13

granted.

   *b. State Claims*

   The defendants seek dismissal of Wincapaw's negligence claim on statutory immunity grounds as well as entry of judgment in favor of their counterclaim.[6] With regard to the negligence claim, Wincapaw argues in response that defendant Hively's conduct falls within the known danger exception to the municipal immunity statute. Wincapaw also opposes the County's counterclaim for reimbursement of medical costs under Wis. Stat. § 302.38, arguing that because reimbursement may be sought by the County under Wis. Stat. § 302.38 or § 302.372, the one-year statute of limitation set forth in § 302.372 should apply by reference to § 302.38, resulting in a time-bar.

   Because I have dismissed Wincapaw's federal claims, I elect not to address either state law claim. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." *Ross ex rel. Ross v. Bd. of Educ.*, 486 F.3d 279, 285 (7th Cir. 2007). In cases where the claim within the original jurisdiction of the district court is dismissed before trial, there is a presumption in favor of the district court relinquishing supplemental jurisdiction over supplemental state law claims rather than resolving them on the merits. *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Gibbs,* 383 U.S. 715, 726 (1966)) (Stating general rule that "balancing judicial economy, convenience, fairness and comity will weigh in favor of relinquishing jurisdiction."). Exceptions to this presumption arise in unusual cases such as those where the statute of limitations has run on a pendent claim or where substantial judicial resources have already been committed. *Id.*

---

[6] Wis. Stat. § 893.80(4) provides municipalities and their officers immunity from suits arising from their discretionary acts.

14

In this case, no good reason exists to exercise supplemental jurisdiction over the parties' remaining state law claims. Although Wincapaw raises a statute of limitations defense in his opposition brief, I am not required to exercise jurisdiction. The County's counterclaim is not time-barred under Wis. Stat. § 302.38. Whether the limitations period set forth in § 302.372 should apply by reference is a question for the state court to address should the County refile its claim in state court. Because this case is in the early stages of litigation and dismissal will not prevent either party from filing an action in state court, the court declines supplemental jurisdiction over and dismisses the remaining state law claims without prejudice.

## IV. CONCLUSION AND ORDER

In conclusion, for all of the foregoing reasons, the defendants' motion for summary judgment on Counts I and II as well as on Wincapaw's newly asserted § 1983 claim will be granted. Furthermore, Wincapaw's remaining state law negligence claim and the County's state law counterclaim will be dismissed without prejudice so that each may refile their respective claims in the Waukesha County Circuit Court.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment on the Wincapaw's claims brought pursuant to 42 U.S.C. § 1983 be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that Wincapaw's claims brought pursuant to 42 U.S.C. § 1983 be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that Wincapaw's state law negligence claim be and hereby is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the defendant County's state law counterclaim for reimbursement of medical expenses pursuant to Wis. Stat. § 302.38, be and hereby is **DISMISSED**

**WITHOUT PREJUDICE**;

    **IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

    **IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

    **SO ORDERED** this 5th day of July 2011, at Milwaukee, Wisconsin.

                                  **BY THE COURT:**

                                  s/ William E. Callahan, Jr.
                                  WILLIAM E. CALLAHAN, JR.
                                  United States Magistrate Judge